**Ellenoff Grossman & Schole LLP**

1345 Avenue of the Americas
New York, NY 10105
Telephone: (212) 370-1300
Facsimile: (212) 370-7889
www.egsllp.com

JOHN C. STELLABOTTE
e-mail: jstellabotte@egsllp.com

July 13, 2017

**Via Facsimile: 1-718-613-2416 and ECF**

Hon. Carol Bagley Amon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Cards Against Humanity, LLC v. SCS Direct, Inc. and Howard Greenspan*,
                Case No. 17-cv-02781 (CBA) (ST)

Dear Judge Amon:

       This Firm represents Defendants, SCS Direct, Inc. ("SCS Direct") and Howard Greenspan ("Defendants"), in the above action. We write to request a pre-motion conference for Defendants' anticipated motion to dismiss, under Fed. R. Civ. P. 12(b)(6), Counts VI and VII (copyright infringement), and Counts II, III, IV, and V (federal and common law trademark and trade dress infringement, federal false designation of origin, and federal and NY state trademark dilution), to the extent that they are based on what the Complaint alleges is the CAH Trade Dress (¶ 29), CAH Tagline (¶ 30), and CAH Card Design (¶ 32). Solely for purposes of moving to dismiss for failure to state a claim, factual allegations of the Complaint (referenced by paragraph number) are accepted as true.

       Plaintiff Cards Against Humanity, LLC ("CAH") seeks to stop SCS Direct from selling a card game that can be played on its own and is "designed in part" (¶ 60) to be used as an expansion to Plaintiff's unpatented Cards Against Humanity game. The SCS Direct game has a disclaimer that it is not endorsed by or affiliated with CAH. The Cards Against Humanity game is played as alleged in ¶ 37. Plaintiff's claims are overreaching and overbroad. Plaintiff has no basis for absolutely prohibiting SCS Direct or other competitors from selling functionally similar games using black and white cards with generic black and white lettering in a publicly available font, which even Plaintiff concedes serve a functional purpose of delineating questions and answers. The idea upon which a game is based cannot be copyrighted. *See, e.g.*, *Ward v. Barnes & Noble, Inc.*, 93 F. Supp. 3d 193, 205 (S.D.N.Y. 2015). A complaint can survive a motion to dismiss only if it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether a claim is plausible, and not merely possible, is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**The Complaint Fails To State Plausible Copyright Infringement Claims**

       A district court may "determine[] non-infringement as a matter of law" on "a Rule 12(b)(6)

motion to dismiss." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 59-63 (2d Cir. 2010). A copyright infringement plaintiff must establish that "'a substantial similarity exists between the defendant's work and the *protectable elements* of plaintiff's.'" *Id.* at 63 (emphasis added) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999)). Plaintiff alleges infringement of ten copyright registrations, which on their face, are directed to different versions of the *entire* CAH game and *entire* CAH expansion packs of cards, which include hundreds of cards. Plaintiff lumps the registrations into the "Copyrighted Works" (¶ 41). More specifically, Plaintiff alleges SCS Direct's infringement is selling "identical and substantially similar versions" of an unspecified number of "many" individual game "cards" (¶ 147-48).

First, where a plaintiff alleges that portions of a number of works have been infringed, it must specifically identify the allegedly infringed works. *See, e.g.*, *Ward v. Andrews McMeel Publ'g, LLC*, 963 F. Supp. 2d 222, 232-233 (S.D.N.Y. 2013); *Plunket v. Doyle*, No. 99 Civ. 11006 (KMW), 2001 WL 175252, at *4 (S.D.N.Y. 2001) ("[A]llegations that defendant copied from any of six books lacked sufficient specificity") (citation omitted). Second, even if Plaintiff could assert claims with the requisite specificity, words and short phrases, such as those alleged as examples of infringement (*see, e.g.*, ¶¶ 69, 70, 76), are not subject to copyright protection. *See, e.g.*, *Ward*, 963 F. Supp. 2d at 232-35 (granting motion to dismiss, holding that no aspect of lettering scheme or answers in publisher's hangman word game books was protected by copyright). Indeed, Copyright Office regulations do not extend protection to what Plaintiff alleges was copied. *See* 37 C.F.R. §§ 202.1(a) (words and short phrases; mere variations of typographic ornamentation, lettering or coloring); 202.1(e) (typeface as typeface). Third, even if the alleged examples of infringement were of *protectable* elements, the Complaint includes only 17 cards from sets that include hundreds of cards. Conclusory allegations that that this is "many" cards do not plausibly establish the *quantitative* threshold of substantial similarity. *See, e.g.*, *Newton v. Penguin/Berkley Publ'g*, No. 13 Civ. 1283 (CM), 2014 WL 505191, at *1-2 (S.D.N.Y. Jan. 28, 2014). A vague reference to selection of unspecified amounts of "many" of "CAH's cards and their arrangement into black and white cards" (¶ 76) also does not plausibly allege infringement of an *entire* compilation. The contributory and vicarious infringement claim against Mr. Greenspan (¶ 147) also cannot survive if the underlying claim against SCS Direct is dismissed.

**The Complaint Fails To State Plausible Claims Based On The CAH Card Design, CAH Trade Dress, and CAH Tagline.**

Plaintiff alleges infringement of *unregistered* trade dress based on "the distinctive overall look and feel" of its game cards ("the CAH Card Design") (¶ 32). Counts III, IV, V. Plaintiff alleges that its game and "the Infringing Game" both use "white cards" with black text in a left justified san serif font on the upper third of the card with the word "humanity in a stylized phrase at the bottom, with short phrase on the cards ending in a period (¶¶ 67-69) and have "black cards" that use a san serif font, left justification, but with the colors reversed. Plaintiff does not precisely define its CAH Card Design trade dress, but it includes using black and white cards, with generic, public domain features, including left justification, vertically aligned text, periods, and public domain fonts. Granting Plaintiff a monopoly over the CAH Card Design would put competitors who sell games that are functionally similar games capable of being played alone or with Plaintiff's game, or other functionally similar games, at a significant, non-reputation-related disadvantage. "Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001). The Supreme Court has been careful to "caution against misuse or overextension of trade dress." *Id*.

Plaintiff bears the burden of alleging nonfunctionality of its *unregistered* trade dress, and

there is a statutory presumption under 15 U.S.C. §1125(a)(3) that it is functional. The Complaint makes no allegations whatsoever that the CAH Card Design is nonfunctional. *See, e.g.*, *Bubble Genius LLC v. Smith*, No. 15-CV-05369 (KAM), 2017 WL 888251, at *3-6 (E.D.N.Y. Mar. 6, 2017) (granting motion to dismiss claims for trade dress infringement, state and federal unfair competition, based on claimed trade dress in periodic table soap using generic, public domain features as functional and aesthetically functional, and for failure to allege plausibly acquired secondary meaning). Indeed, Plaintiff concedes that the black and white cards have a functional purpose of delineating questions and answer cards in its game (¶ 37). And Plaintiff's allegations that the CAH Card Design has achieved secondary meaning are deficient, conclusory, and not plausibly alleged (¶¶ 27, 29, 32, 33, 34, 35, 36, 39, 40, 71, 72, 115, 129). For example, the allegations do not include consumer survey evidence, advertising expenditures, or claims highlighting the alleged trade dress, any specifically identified "successful policing" of the CAH Card Design, and allegations of sales success connected to CAH as the source of the alleged trade dress, as opposed to the game itself. *Carson Optical, Inc. v. Prym Consumer USA*, 11 F. Supp. 3d 317, 342-43 (E.D.N.Y. 2014) (dismissing trade dress claims for failure to plead sufficiently secondary meaning); *Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 Civ. 3599 (RWS), 2013 WL 866867, at *2-7 (S.D.N.Y. Mar. 8, 2013) (dismissing trade dress and dilution claims for failure to plead secondary meaning).

The CAH Trade Dress (¶ 30), as described in Registration No. 4,623,613 is "a three-dimensional black rectangular product packaging featuring the words 'CARDS AGAINST HUMANITY' in white letters located in the upper left-hand corner of the rectangular design, with the phrase 'A PARTY GAME FOR HORRIBLE PEOPLE' in white letters directly below." "The color(s) black and white is/are claimed as a feature of the mark." Plaintiff alleges (¶ 30) that the CAH Trade Dress consists of other elements not recited in the Registration description, including "black lettering on a white background" "with vertically aligned text in Helvetica Neue font." Regardless, Plaintiff fails to identify any SCS Direct game that uses three-dimensional black rectangular product packaging with white letters. The multiple games and card packs that Plaintiff has lumped together and alleged are the Infringing Game (*see, e.g.*, ¶¶ 9, 43, 71) use red, white, and blue packaging, with red, white, and blue lettering in a different font. They cannot plausibly infringe the registered CAH Trade Dress. *See, e.g.*, *Open Air Entm't v. CW Cases*, No. CV 12-04240 (GAF), 2012 WL 12892362, at *4 (C.D. Cal. July 26, 2012) (granting motion to dismiss claim for infringement of registered trade dress as implausible on its face, where the registration stated that mark "form[ed] the letter P" shape for a photo booth and the alleged infringing booth used a different "b" shape). Plaintiff also alleges that SCS Direct is using a tagline "A Party Game for Horrible Candidates" that infringes the CAH Tagline, Registration No. 4,304,905, "A PARTY GAME FOR HORRIBLE PEOPLE" (¶ 66), but fails to identify any SCS Direct game that it alleges uses that tagline. The tagline claim is also implausible. For the above reasons, as well other reasons to be detailed in Defendants' supporting memorandum, the above-referenced claims fail to state a claim.

                                                             Respectfully submitted,

                                                             /s/ John C. Stellabotte

                                                            John C. Stellabotte

cc: Eleanor M. Lackman, Esq. and Lindsay Bowen, Esq. (counsel for plaintiff, CAH, via e-mail)