UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CARDS AGAINST HUMANITY, LLC** | Civil Action No: 17-cv-02781 (CBA)(ST) |
| Plaintiff, | |
| v. | |
| **SCS DIRECT, INC. and HOWARD GREENSPAN** | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
SCS DIRECT, INC. AND HOWARD GREENSPAN'S
PARTIAL MOTION TO DISMISS THE COMPLAINT**

R. David Lane, Jr.
Marshall Dennehey Warner Coleman & Goggin
*Attorneys for Defendants*
*SCS Direct, Inc. and Howard Greenspan*
Wall Street Plaza
88 Pine Street, 21st Floor
New York, New York 10005
T: (212) 376-6400
F: (212) 376-6490
**RDLane@mdwcg.com**

**TABLE OF CONTENTS**

Page

I.  PRELIMINARY STATEMENT .................................................................................................. 1

II. RELEVANT FACTUAL ALLEGATIONS ............................................................................ 3

III. STANDARD OF REVIEW ................................................................................................... 5

IV. ARGUMENT .......................................................................................................................... 6

    a.  The Various Claims Based on the Alleged Use of  of the CAH Trade Dress in its Product Packaging and CAH Tagline Are Implausible As Plaintiff Has Failed to Identify Any Game That Uses Plaintiff's Packaging or Tagline. .................................. 6

    b.  Plaintiff's Claim for Infringement of the Unregistered Trade Dress in the CAH Card Design Should Be Dismissed Because the Complaint Fails to Allege Sufficient Facts of Nonfunctionality, Secondary Meaning, or the Character and Scope of the Claimed Trade Dress in the CAH Card Design. ............................................................ 8

    c.  The Complaint Fails to State Plausible Copyright Infringement Claims. .......... 13

V. CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Am. Footwear Corp. v. Gen. Footwear Co.*, 609 F.2d 655 (2d Cir. 1979)) ................................ 12
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 5
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 5
*Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815 (Fed. Cir. 1992) ...................................... 12
*Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586 (E.D.N.Y. Mar. 6, 2017) ............................ 13
*Carson Optical, Inc. v. Prym Consumer USA*, 11 F. Supp. 3d 317 (E.D.N.Y. 2014) ................ 12
*Cartier, Inc. v. Sardell Jewlery, Inc.*, 294 Fed. Appx. 615 (2d Cir. 2008) ............................ 10, 12
*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ..................................................... 6
*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010) ................................................... 5
*Heptagon Creations, LTD v. Core Group Marketing, LLC*, 2011 US Dist. LEXIS 147102 (SDNY Dec. 22, 2011) ......................................................................................................... 9, 11
*Hormel Foods Corp. v. Jim Henson Prods.*, 73 F.3d 497, 506 (2d Cir. 1996) ............................. 7
*JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294 (S.D.N.Y. 2010) ........................................... 6
*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2d Cir. 1995) ........................... 9
*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997) ....................... 12
*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp.2d 448 (S.D.N.Y. 2005) .............. 7
*Lyons Partnership, L.P. v. D&L Amusement & Entertainment, Inc.*, 702 F. Supp. 2d 104 (E.D.N.Y. 2010) ........................................................................................................................ 7
*McCarthy v. Dunn & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) ......................................... 5
*McDonald v. West*, 138 F. Supp. 3d 448 (S.D.N.Y. 2015) ........................................................ 15
*Muniz v. Morillo*, 2008 U.S. Dist. LEXIS 69163 (S.D.N.Y. Sept. 10, 2008) .............................. 7
*National Lighting Co. v. Bridge Metal Industries*, 601 F. Supp. 2d 556 (S.D.N.Y. 2009) ...... 9, 13
*Newton v. Penguin/Berkley Publ'g*, 2014 U.S. Dist. LEXIS 11597 (S.D.N.Y. Jan. 28, 2014) .... 15
*Nora Beverages. Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114 (2d Cir. 2001) .............. 8
*Open Air Entm't v. CW Cases*, 2012 U.S. Dist. LEXIS 194039 (C.D. Cal. July 26, 2012) .......... 8
*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F. 3d 57 (2d Cir. 2010) ............... 13
*Plunket v. Doyle*, 2001 U.S. Dist. LEXIS 2001 (S.D.N.Y. 2001) ............................................. 14
*Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389, 391 (2d Cir. 2003) .................. 9
*Shevy Custom Wigs, Inc. v. Aggie Wigs.*, 2006 U.S. Dist. LEXIS 83495 (E.D.N.Y. Nov. 17, 2006) ........................................................................................................................................ 12
*Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463 (S.D.N.Y. July 14, 2008) ........................... 7
*TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001) ...................................... 9
*Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, 2013 U.S. Dist. LEXIS 33270 (S.D.N.Y. Mar. 8, 2013) ............................................................................................ 11,12
*Ward v. Andrews McMeel Publ'g, LLC*, 963 F. Supp. 2d 222 (S.D.N.Y. 2013) ........................ 14
*Ward v. Barnes & Noble, Inc.*, 93 F. Supp. 3d 193 (S.D.N.Y. 2015) ........................................ 13
*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001) .................................................. 9

**Statutes**

15 U.S.C. § 1114 .................................................................................................................. 6
15 U.S.C. § 1125 ............................................................................................................... 6,9
17 U.S.C. § 101 .................................................................................................................... 5
37 C.F.R. § 202.1 ............................................................................................................... 14
Fed. R. Civ. P. 12 ................................................................................................................. 5
NY Gen. Bus. Law § 360-1 ................................................................................................. 7

I. **PRELIMINARY STATEMENT**

Plaintiff, Cards Against Humanity, LLC, the maker of the card game, Cards Against Humanity ("CAH"), seeks to prohibit Defendants, SCS Direct, Inc. ("SCS"), the maker of the card games, "Humanity Hates Trump," "Humanity Hates Hillary, Too," and "Humanity Hates Trump-Expansion One" (collectively "HHT"), and SCS' President, Howard Greenspan, from selling a functionally similar game that also uses black and white cards and certain words and short phrases that Plaintiff claims are similar to those used on 17 CAH cards, out of thousands. The parties' games function similarly, in that each game contains a base set of cards, and players take turns reading incomplete sentences from the deck of black cards with white lettering, while the other players complete the sentence with phrases from the white cards with black lettering. The first player picks the "best" answer (funniest pairing) and awards the white card's player a point, and play continues with a new judge picking a new black card.

The CAH packaging is almost entirely black with white text. CAH uses the tagline "A Party Game For Horrible People." Unlike CAH, HHT is a political game about the 2016 Presidential election candidates. HHT packaging is red, white and blue with white stars and red stripes and uses the tagline "Making American Party Games Great Again!" Despite the significant differences between the names, appearance, taglines, and text of the parties' games, Plaintiff alleges, *inter alia*, that Defendants have infringed Plaintiff's trademarks, trade dress, and copyrights in CAH.

This partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is directed to Counts I, II, III, IV, V and VIII (federal and common law trademark infringement, trade dress infringement, federal false designation of origin, common law unfair competition, and federal and state trademark dilution) to the extent that they are based on what the Complaint alleges is

1

the CAH Trade Dress, CAH Tagline, and CAH Card Design, and Counts VI and VII for copyright infringement.

With respect to Plaintiff's trademark infringement and related claims based upon the alleged use of the CAH product packaging and tagline, these claims are implausible. Plaintiff fails to identify any SCS game that uses a three-dimensional black rectangular product packaging with white letters. HHT uses red, white, and blue packaging, with red, white, and blue lettering in a different font. Plaintiff has also failed to identify any SCS game that uses the CAH Tagline "A Party Game for Horrible People."

Plaintiff's claim for infringement of the unregistered alleged trade dress in its CAH Card Design also fails, as the allegations show that the CAH Card Design is non-functional, it has not acquired secondary meaning in the marketplace, and Plaintiff has failed to allege a precise expression of the character and scope of the claimed trade dress, all of which are required elements necessary to state this claim.

Finally, the copyright infringement claims should be dismissed for several reasons. Plaintiff has failed to identify specifically the allegedly infringed works, the allegedly copied words and short phrases that form the basis of this claim are not subject to copyright protection, and even if they were, the use of these words and short phrases constitutes a de minimus use of the alleged Copyrighted Works and therefore fails to plausibly establish the quantitative threshold of substantial similarity necessary to state a claim for copyright infringement.

Therefore, for the reasons discussed more fully below, Defendants respectfully request that Counts I, II, III, IV, V, and VIII, to the extent that they are based on the allege use of the CAH Trade Dress, CAH Tagline, and CAH Card Design, and Counts VI and VII for copyright infringement, be dismissed with prejudice.

## II. RELEVANT FACTUAL ALLEGATIONS

Plaintiff is the maker of the card game, CAH. CAH contains a base set of cards. Players take turns reading incomplete sentences from the deck of black cards with white lettering, while the other players complete the sentence with phrases from the white cards with black lettering. The first player picks the "best" answer (funniest and most outre) pairing and awards the white card's player a point, and play continues with a new judge picking a new black card. Exhibit A ¶ 37. Plaintiff also sells expansion packs of cards that can be used with the original CAH base set by mixing the cards together. *Id*. ¶ 42.

Defendant, SCS is a consumer products company. Defendant, Howard Greenspan, is the company's owner and President. *Id*. ¶ 57. SCS makes a card game of its own called HHT. *Id*. ¶ 60. HHT is a political game about the 2016 Presidential election candidates that functions similarly to CAH.

Plaintiff alleges the ownership of certain trademarks registered with the United States Patent and Trademark Office ("USPTO"). These marks include: the mark "Cards Against Humanity" (Registration No. 4,304,905), which consists of standard characters without claim to any particular font, style, size, or color; the mark in the tagline "A Party Game For Horrible People" (Registration No. 4,301,057), which consists of standard characters without claim to any particular font, style, size, or color; a mark in a three-card design (Registration No. 4,840,965); and trade dress in the CAH product packaging (Registration No. 4,623,613), which is a three-dimensional black rectangular box featuring the words "Cards Against Humanity" in white letters located in the upper left-hand corner of the rectangular design, with the phrase "A Party Game for Horrible People" in white letters directly below. The colors black and white are claimed as a feature of the mark in the product packaging. *Id*.¶30; Exhibit B.

In describing its alleged trade dress, which Plaintiff generally defines as the "CAH Trade Dress," Plaintiff alleges additional elements not recited in the registration for its registered trade dress in its product packaging, such as "white lettering on a black background with vertically aligned text in Helvetica Neue font… and black lettering on a white background with vertically aligned text in Helvetica Neue font." Exhibit A ¶30. Plaintiff also alleges common law trade dress rights in the unregistered "CAH Card Design," which Plaintiff describes as the distinctive overall look and feel of its card design. *Id.*¶ 32.

Plaintiff alleges ownership of ten copyright registrations which Plaintiff refers to collectively as the "Copyrighted Works" *Id.* ¶ 41. Each copyright registration pertains to a different version of CAH, making the total number of cards in the CAH game number in the thousands. *Id.*

HHT cards are also black and white. See e.g. *Id.* ¶¶ 69, 70, 74. HHT packaging is red, white and blue, and contains a stars and stripes design and a blue font. See e.g. *Id.* ¶ 71, Fig. 5. Plaintiff alleges that CAH and HHT both use white cards with black text set in a left justified san serif font on the upper third of the card with the word "Humanity" in a stylized phrase at the bottom left of the card, with a short phrase on the cards ending in a period and have "black cards" that use a san serif font, left justification, but with the colors reversed. *Id.* ¶¶ 67-69. Plaintiff also alleges that 17 HHT cards contain words or phrases that are similar to 17 CAH cards within the Copyrighted Works, which span 10 different copyrighted versions of CAH. *Id.* ¶ 76.

Plaintiff has asserted claims for trademark infringement pursuant to 15 USC § 1114(1), false designation of origin pursuant to 15 USC § 1125(a), trademark dilution pursuant to 15 USC § 1125(c), contributory trademark infringement against Defendant Greenspan pursuant to 15

4

USC §§ 1114(1)(A), common law trademark infringement and unfair competition, trademark dilution pursuant to NY Gen. Bus. Law § 360-1, direct copyright infringement pursuant to 17 USC §§ 101 et seq., and contributory copyright infringement against Defendant Greenspan pursuant to 17 USC §§ 101.

### III. STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dunn & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citations omitted). While detailed factual allegations are not required, the pleading standard set forth in Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepts as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570. (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotations and citations omitted).

For the purposes of a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A district court may also consider "matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and

5

relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citation omitted).

IV. ARGUMENT

    a. **The Various Claims Based on the Alleged Use of the CAH Trade Dress in its Product Packaging and the CAH Tagline Are Implausible As Plaintiff Has Failed to Identify Any Game That Uses Plaintiff's Packaging or Tagline.**

Plaintiff's various claims of federal and common law trademark infringement, trade dress infringement, federal false designation of origin, common law unfair competition, and federal and state trademark dilution based upon the alleged use of the CAH Trade Dress in the CAH product packaging and the CAH Tagline "A Party Game for Horrible People," are implausible. A cursory review of the descriptions and images of the parties' respective product packaging reveals that they are entirely different and Plaintiff has not identified any SCS game that uses its product packaging. Similarly, Plaintiff fails to identify any SCS game that uses the CAH Tagline "A Party Game for Horrible People." Therefore, any claims based on the CAH packaging and tagline should be dismissed.

To prevail on a claim for registered trademark infringement under under § 32(1) of the Lanham Act, 15 USC § 1114, a plaintiff is required to prove that its mark is valid and entitled to protection and that a defendant's use of that mark is likely to cause consumer confusion as to the origin or sponsorship of the defendant's goods. *JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 308 (S.D.N.Y. 2010). "A false designation of origin or false description claim under [Section 43(a)] the Lanham Act, [15 USC § 1125(a)] is similar to a trademark infringement claim except that it applies to unregistered as well as registered trademarks. To prevail on such a claim, a plaintiff must prove that 'first, . . . its mark merits protection, and second, that the defendant's use of a similar mark is likely to cause consumer confusion,' as to origin,

6

sponsorship, or affiliation of the defendant's goods." *Lyons Partnership, L.P. v. D&L Amusement & Entertainment, Inc.*, 702 F. Supp. 2d 104, 113 (E.D.N.Y. 2010) (citing *Muniz v. Morillo*, 2008 U.S. Dist. LEXIS 69163 *13 (S.D.N.Y. Sept. 10, 2008). Common law claims for trademark infringement and unfair competition under New York law require the same elements as those for registered trademark infringement, though unfair competition under New York law requires the additional element of bad faith. *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp.2d 448, 456 (S.D.N.Y. 2005).

Trademark dilution is grounded in the notion that a trademark can lose its "ability . . . to clearly and unmistakably distinguish one source through unauthorized use." *Hormel Foods Corp. v. Jim Henson Prods.,* 73 F.3d 497, 506 (2d Cir. 1996) (internal quotation omitted). To state claim for federal trademark dilution under the Lanham Act, a plaintiff must allege facts that: (1) its mark is famous; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use is likely to cause dilution by tarnishment or dilution by blurring. *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463 (S.D.N.Y. July 14, 2008). New York's dilution cause of action is substantially similar to the federal claim. Under New York General Business Law § 360-l, "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

It is clear from the Complaint that the HHT packaging cannot serve as the basis for any of the claims that Plaintiff has asserted. The CAH Trade Dress in its product packaging is described in Registration No. 4,623,613 as "a three-dimensional black rectangular product

7

packaging featuring the words CARDS AGAINST HUMANITY in white letters located in the upper left-hand corner of the rectangular design, with the phrase 'A PARTY GAME FOR HORRIBLE PEOPLE' in white letters directly below." Plaintiff fails to identify any SCS game that uses three-dimensional black rectangular product packaging with white letters. The multiple games and card packs that Plaintiff has lumped together and alleged are the Infringing Game (see, e.g., Exhibit A ¶¶ 9, 43, 71) use red, white, and blue packaging, with red, white, and blue lettering in a different font. Therefore, HHT cannot plausibly infringe the registered CAH Trade Dress. *See, e.g., Open Air Entm't v. CW Cases*, 2012 U.S. Dist. LEXIS 194039 *11 (C.D. Cal. July 26, 2012) (granting motion to dismiss claim for infringement of registered trade dress as implausible on its face, where the registration stated that the mark "form[ed] the letter P" shape for a photo booth and the alleged infringing booth used a different "b" shape). As such, any claim based upon the alleged use of the CAH Trade Dress in its product packaging should be dismissed.

Further, Plaintiff alleges that SCS uses the tagline "A Party Game for Horrible Candidates," which infringes the CAH Tagline, Registration No. 4,301,057, "A PARTY GAME FOR HORRIBLE PEOPLE" (Exhibit A ¶ 66). However, Plaintiff fails to identify any SCS game that uses that tagline. Therefore, Plaintiff's claim based upon the alleged infringement of the CAH Tagline is also implausible and should be dismissed.

> **b.** **Plaintiff's Claim for Infringement of the Unregistered Trade Dress in the CAH Card Design Should Be Dismissed Because the Complaint Fails to Allege Sufficient Facts of Nonfunctionality, Secondary Meaning, or the Character and Scope of the Claimed Trade Dress in the CAH Card Design.**

"A product's trade dress encompasses the overall design and appearance that make the product identifiable to consumers." *Nora Beverages. Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 119 (2d Cir. 2001). It is "essentially a product's total image and overall appearance ...

8

as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995). "Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001). The Supreme Court has been careful to "caution against misuse or overextension of trade dress." *Id*.

Trade dress infringement claims generally involve either product packaging or product design. Courts are particularly cautious about trade dress claims in product design cases because "almost invariably, even the most unusual of product designs… is intended not to identify the source of the product, but to render the product itself more useful or more appealing." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114-15 (2d Cir. 2001). A plaintiff must show that aspects of the product exist for the sole purpose of identifying the plaintiff as the source of the product, rather than for aesthetic or functional purposes. *Heptagon Creations, LTD v. Core Group Marketing, LLC*, 2011 US Dist. LEXIS 147102 at * 20-21 (SDNY Dec. 22, 2011).

A party asserting a claim of trade dress infringement in a product design case must allege: (1) a likelihood of confusion between the plaintiff's good and the defendant's; (2) the claimed trade dress is non-functional; (3) the claimed trade dress has secondary meaning; and (4) a precise expression of the character and scope of the claimed trade dress. *National Lighting Co. v. Bridge Metal Industries*, 601 F. Supp. 2d 556, 560 (S.D.N.Y. 2009); see also *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 Fed. Appx. 389, 391 (2d Cir. 2003).

In this case, Plaintiff alleges common law trade dress in its CAH Card Design, which is not registered with the USPTO. Plaintiff claims the rights to white cards with black text in a left justified san serif font on the upper third of the card, a stylized phrase at the bottom, with a short

9

phrase on the cards ending in a period. Plaintiff also claims the rights to black cards that use a san serif font, left justification, but with the colors reversed. Exhibit A ¶¶ 67-69. Therefore, as alleged, the CAH Card Design consists of black and white cards, with generic, public domain features, including left justification, vertically aligned text, periods, and public domain fonts. This trade dress infringement claim fails for multiple reasons.

First, the allegations are insufficient to show that the CAH Card Design is nonfunctional. A plaintiff bears the burden of proving that the alleged trade dress is non-functional, 15 U.S.C. § 1125(a)(3), and there is a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection," *TrafFix Devices, Inc.*, 532 U.S. at 29 (2001). "A product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Yurman Design*, 262 F.3d at 116. A trade dress claim based on "[a] product design is functional when certain features of the design are essential to effective competition in a particular market." *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 Fed. Appx. 615, 620 (2d Cir. 2008) "[I]n cases involving an aesthetic feature, the dress is also functional if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage. Thus, the nonfunctionality requirement protects competition even at the cost of potential consumer confusion." *Yurman Design*, 262 F.3d at 116.

Here, the allegations make clear that Plaintiff's black and white cards are functional, as they are statutorily presumed to be. The black and white cards clearly serve the functional purpose of delineating the question and answer cards in the game. Exhibit A ¶ 37. Additionally, the text layout of the claimed card design is essential to the use of the card. The text located at the top of the front side of the card clearly exists in that location so that the players can read the

10

cards while holding multiple cards. (If the text appeared in the middle or bottom of the card, some cards would cover other cards in the hand.)

Further, the CAH Card Design is functional in that it affects the cost of the article. It is axiomatic that printing in black and white is less expensive than printing in color. Forcing competing card game makers to print in color rather than in black and white would place them at a significant non-reputation-related disadvantage. The same can be said for Plaintiff's claimed layout and the use of generic, public domain fonts. Granting Plaintiff a monopoly in these basic, functional aspects of its card design would hinder competition by limiting the range of adequate alternative designs. At the very least, the CAH Card Design has a generalized appearance that may not serve as trade dress. The allegations on their face make clear that the aspects of the claimed card design do not exist for the sole purpose of identifying the Plaintiff as the source of the product, as opposed to aesthetic or functional purposes. *Heptagon Creations, LTD v. Core Group Marketing, LLC*, 2011 US Dist. LEXIS 147102 (SDNY 2011).

Second, Plaintiff has failed to allege sufficiently secondary meaning. A product has acquired secondary meaning when "in the minds of the public, the primary significance of the [dress] is to identify the source of the product rather than the product itself." *Yurman Design, Inc.*, 262 F.3d at 116. (internal quotation marks and citation omitted) see also *Urban Group Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, 2013 U.S. Dist. LEXIS 33270 *7 (S.D.N.Y. Mar. 8, 2013) ("[t]rade dress is considered to have attained secondary meaning when a consumer immediately associates the dress of the product with its source") (internal quotation marks and citation omitted). To determine whether secondary meaning has attached, the court considers the following factors: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to

11

plagiarize the mark, and (6) the length and exclusivity of the mark's use." *Cartier, Inc.*, 294 F. App'x at 618 (internal quotation marks and citations omitted).

Here, Plaintiff's allegations that the CAH Card Design has achieved secondary meaning are deficient, conclusory, and not plausibly alleged. See Exhibit A ¶¶ 27, 29, 32, 33, 34, 35, 36, 39, 40, 71, 72, 115, 129. For example, the allegations do not include consumer survey evidence, advertising expenditures, or claims highlighting the success of the alleged trade dress, or any specifically identified "successful policing" of the CAH Card Design. No sufficient allegations exist that CAH's advertisements or promotions stressed or emphasized the alleged trade dress in the CAH Card Design. See *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 826-27 (Fed. Cir. 1992) (citing *Am. Footwear Corp. v. Gen. Footwear Co.*, 609 F.2d 655, 663 (2d Cir. 1979)) (finding that $5.5 million in advertising expenditures were irrelevant to the issue of secondary meaning since the plaintiff "did not proffer evidence establishing that the advertising effectively created secondary meaning" in the alleged trade dress). The allegations do not include sales success connected to CAH as the source of the alleged trade dress, as opposed to the game itself. *Carson Optical, Inc. v. Prym Consumer USA*, 11 F. Supp. 3d 317, 342-43 (E.D.N.Y. 2014) (dismissing trade dress claims for failure to plead sufficiently secondary meaning); *Urban Group Exercise Consultants,* 2013 U.S. Dist. LEXIS 33270 at *7-16 (dismissing trade dress and dilution claims for failure to plead secondary meaning).

Third, the allegations lack a precise expression of the character and scope of the claimed trade dress in the CAH Card Design. Plaintiff has failed to articulate "the specific elements which comprise its distinct dress." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381(2d Cir. 1997); see *Shevy Custom Wigs, Inc. v. Aggie Wigs.*, 2006 U.S. Dist. LEXIS 83495 (E.D.N.Y. Nov. 17, 2006) (plaintiffs must plead the "elements of their product design

12

with specificity to be afforded trade dress protection). The Complaint fails to specify "not just which features are distinctive, but also how they are distinctive." *Shevy Custom Wigs, Inc.*, 2006 U.S. Dist. LEXIS 83495. "Laudatory" descriptions without specificity "fail to indicate what unique combination of features makes the trade dress . . . likely to be perceived by consumers as bearing the stamp of their maker." *Landscape Forms*, 113 F.3d at 381-82; see *Shevy Custom Wigs, Inc.*, 2006 U.S. Dist. LEXIS 83495 (holding "sweeping descriptions . . . in fact denote categories of features, not the features themselves"); *National Lighting*, 601 F. Supp. 2d at 562 (finding a "laundry list of the elements that constitute a . . . design" insufficient to demonstrate distinctiveness).

Therefore, for the foregoing reasons, Plaintiff has failed to allege the elements necessary to support a claim of trade dress infringement of the CAH Card Design, and this claim should be dismissed. *See, e.g., Bubble Genius LLC v. Smith*, No. 15-CV-05369 (KAM), 2017 WL 888251, at *3-6 (E.D.N.Y. Mar. 6, 2017) (granting motion to dismiss claims for trade dress infringement, state and federal unfair competition, based on claimed trade dress in periodic table soap using generic, public domain features as functional and aesthetically functional, and for failure to allege plausibly acquired secondary meaning).

      **c.**    **The Complaint Fails to State Plausible Copyright Infringement Claims.**

The idea upon which a game is based cannot be copyrighted. See, e.g. *Ward v. Barnes & Noble, Inc.*, 93 F. Supp. 3d 193, 205 (S.D.N.Y. 2015). In order to establish copyright infringement, a plaintiff must establish that a substantial similarity exists between the defendant's work and *the protectable elements* of plaintiff's work. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F. 3d 57, 63 (2d Cir. 2010). (emphasis added). A district court may "determine[] non-infringement as a matter of law" on "a Rule 12(b)(6) motion to dismiss." *Peter F. Gaito Architecture, LLC*, 602 F.3d at 59-63.

13

Where a plaintiff alleges that portions of a number of works have been infringed, it must specifically identify the allegedly infringed works. *See, e.g., Ward v. Andrews McMeel Publ'g, LLC*, 963 F. Supp. 2d 222, 232-233 (S.D.N.Y. 2013); *Plunket v. Doyle*, No. 99 Civ. 11006 (KMW), 2001 WL 175252, at *4 (S.D.N.Y. 2001) ("[A]llegations that defendant copied from any of six books lacked sufficient specificity") (citation omitted). Plaintiff alleges the infringement of ten different copyright registrations, each of which pertain to a different version of the CAH game. Plaintiff lumps the registrations into what it refers to as the "Copyrighted Works." Exhibit A ¶ 41. Collectively, the alleged Copyrighted Works consist of thousands of CAH cards. In alleging that Defendants copied 17 CAH cards from any of 10 different copyrighted versions of the CAH card game, Plaintiff has failed to specifically identify the allegedly infringed works. Plaintiff then alleges that SCS' infringement consists of selling "identical and substantially similar versions" of an unspecified number of "many" individual game "cards." Exhibit A ¶147-48. These allegations do not state a plausible claim of copyright infringement.

Further, even if Plaintiff could assert claims with the requisite specificity, words and short phrases, such as those alleged as examples of infringement (*see, e.g.*, Exhibit A ¶¶ 69, 70, 76), are not subject to copyright protection. *See, e.g., Ward*, 963 F. Supp. 2d at 232-35 (granting motion to dismiss, holding that no aspect of lettering scheme or answers in publisher's hangman word game books was protected by copyright). Indeed, Copyright Office regulations do not extend protection to words and short phrases, which is what Plaintiff alleges was copied. See 37 C.F.R. §§ 202.1(a) (words and short phrases; mere variations of typographic ornamentation, lettering or coloring); 202.1(e) (typeface as typeface). See *McDonald v. West*, 138 F. Supp. 3d

14

448, 454 (S.D.N.Y. 2015), aff'd, 669 F. App'x 59 (2d Cir. 2016) ("Words and short phrases . . . rarely if ever exhibit sufficient originality to warrant copyright protection").

Even if the allegedly copied words or short phrases were protectable elements, which they are not, the Complaint includes only 17 cards from sets that include thousands of cards. At most, these allegations demonstrate a de minimus use of the alleged Copyrighted Works, which is not prohibited by copyright law. *See, e.g., Newton v. Penguin/Berkley Publ'g*, 2014 U.S. Dist. LEXIS 11597 at *3 (S.D.N.Y. Jan. 28, 2014). Conclusory allegations that this constitutes "many" cards fail to plausibly establish the quantitative threshold of substantial similarity. Also, vague reference to selection of unspecified amounts of "many" of "CAH's cards and their arrangement into black and white cards" (¶ 76) also does not plausibly allege infringement of an entire compilation.

Finally, because the underlying copyright infringement claims fail, the contributory and vicarious infringement claim against Mr. Greenspan cannot survive. For these reasons, Plaintiff's copyright infringement claims should be dismissed.

## V.  CONCLUSION

Therefore, for the foregoing reasons, Defendants respectfully request that Counts I, II, III, IV, V, and VIII, to the extent that they are based on the allege use of the CAH Trade Dress, CAH Tagline, and CAH Card Design, and Counts VI and VII for copyright infringement, be dismissed with prejudice.

Dated:  New York, New York
        November 3, 2017

                                              MARSHALL DENNEHEY WARNER
                                              COLEMAN & GOGGIN, P.C.

                            By:    /s/ R. David Lane, Jr.
                                   R. David Lane Jr. (RL 2806)